397 So.2d 1033 (1981)
NORTH MIAMI GENERAL HOSPITAL, a Florida Corporation, Petitioner,
v.
ROYAL PALM BEACH COLONY, INC., a Florida Corporation, Mona Lewis, and Phylis McLaughlin, a/K/a Phylis McLaughlin Ratsky, Respondents.
Case No. 81-456.
District Court of Appeal of Florida, Third District.
May 12, 1981.
*1034 Lawrence & Daniels and Adam Lawrence, Miami, for petitioner.
Nathan & Williams and Martin L. Nathan, Miami, for respondents.
Before SCHWARTZ and FERGUSON, JJ., and EZELL, BOYCE F., Jr. (Ret.), Associate Judge.
SCHWARTZ, Judge.
North Miami General Hospital seeks certiorari review of an order which required it to answer an interrogatory concerning the contents of its admission records of patients not involved in the pending action. We conclude that the burdensomeness and possible breach of confidentiality involved in answering the interrogatory far outweigh the ephemeral advantage the respondent may achieve if a response is required. Accordingly, we quash the order under review.
The hospital is the plaintiff below in an action which claims fraud against the respondent, Royal Palm Beach Colony, Inc. North Miami General contends that in September, 1978, it admitted and treated Phylis McLaughlin, formerly Ratsky, because of a deliberately false statement made by a representative of Royal Palm to a hospital employee, Ms. Fairbanks, that McLaughlin was covered by a Royal Palm group policy which insured her ex-husband. In its defense, Royal Palm claimed, in part, that the hospital should not have relied on this statement because it knew or should have known that an ex-spouse of an employee is not covered under such a policy. Presumably on the theory that, if the situation had not occurred before, the hospital should have been alerted to the lack of credibility in the representation, Royal Palm deposed several hospital employees concerning the extent of their knowledge of such coverage having been provided. Fairbanks, to whom the false statement was supposedly made, said she didn't remember any such previous instance. Another employee, Linda Combs, however, said that it was "very common" that a divorced woman was covered by her former husband's group policy. The defendant thereupon propounded the following interrogatory:
5. During the deposition of Linda Combs, Ms. Combs testified that on `many' occasions prior to September of 1978 she confirmed with insurance companies providing group health insurance the fact that an ex-wife was covered by the wife's ex-husband's group policy: in reference to that testimony, state the name of each and every insurance company within a one year period prior to September 8, 1978, who advised or confirmed for Ms. Combs the fact that there was such coverage for ex-wives of employees who were covered by group health policies and for each such company state the name of the patient for or about whom confirmation of coverage was being sought.
*1035 The hospital objected to this interrogatory on the grounds of oppressiveness and irrelevance. The trial court overruled the objections and ordered an answer. The hospital then filed the present petition for certiorari in this court. The petition is granted.
As we have indicated, "[m]any, probably most, discovery questions may be decided by a proper balancing of the competing interests to be served by granting discovery or by denying it." Dade County Medical Association v. Hlis, 372 So.2d 117, 121 (Fla. 3d DCA 1979). In this case, there is an anvil on the petitioner's pan of the scales, and only a feather on the respondent's.
It is undisputed that, to answer the interrogatory, the hospital would be required manually to retrieve and to review individually no less than 37,037 admission files for the year in question. The expenditure of time and money required for this endeavor is, on its face, a burdensome and oppressive one which may be justified only by a showing of clear necessity which does not remotely exist here. Union Fidelity Life Ins. Co. v. Seay, 378 So.2d 1268 (Fla. 2d DCA 1979); Goodyear Tire & Rubber Co. v. Cooey, 359 So.2d 1200 (Fla. 1st DCA 1978); Schering Corp. v. Thornton, 280 So.2d 493 (Fla. 4th DCA 1973). More important is the fact that any revelation of the contents of the documents concerning other patients who have no connection whatever with this litigation will, to a greater or lesser extent, impermissibly compromise their right to the confidentiality of their medical records which is protected from such incursions by both decisional and statutory law. Dade County Medical Association v. Hlis, supra; American Health Plan, Inc. v. Kostner, 367 So.2d 276 (Fla. 3d DCA 1979); Argonaut Ins. Co. v. Peralta, 358 So.2d 232 (Fla. 3d DCA 1978), cert. denied, 364 So.2d 889 (Fla. 1978); Sections 90.503, 390.002, 394.459(9), 395.19, 395.202, 397.053, 827.07(15), Florida Statutes (1979).
As against these impressive reasons for refusing to permit discovery, Royal Palm's showing for requiring it was nebulous at best. It seeks to establish that there were no prior examples of similar coverage afforded a North Miami patient, as a means of showing that the hospital should not have believed Royal Palm's assertion that coverage indeed existed in this particular case. There are several things wrong with this contention. First, under Besett v. Basnett, 389 So.2d 995, 998 (Fla. 1980), one's reliance does not constitute a defense to a deliberate misrepresentation "unless he knows the representation to be false[[1]] or its falsity is obvious to him." [e.s.] The fact, if it is one, that the hospital knew that there was no coverage in previous cases would seem not even to be relevant, and is certainly not significant, to this pivotal issue of whether the defendant's statement was objectively, "obviously" untrue. Moreover, if, arguendo, lack of knowledge is at all pertinent, Fairbanks, the person who dealt with Royal Palm, specifically said she had no recollection of any prior instance; her testimony was thus favorable to the respondent on this point. The employee who said otherwise, and who was therefore unfavorable, Combs, did not rely on the representation. For this reason, the hospital concedes that it could not introduce her testimony affirmatively to show the reasonableness of its reliance on Royal Palm's statement. See Britton v. Poore, 57 Fla. 45, 49 So. 507 (1909). Yet, as the interrogatory itself shows, Royal Palm's hope of impeaching Combs' testimony forms the real basis of the discovery effort now before us. But see, Williams v. Thomas Jefferson University, 343 F. Supp. 1131 (E.D.Pa. 1972) (discovery of confidential hospital records solely for impeachment unjustified). In sum, the defendant seeks information which may or may not impeach an unhelpful witness who cannot testify against it on a point upon which it has admissible favorable testimony and which is of very dubious relevance anyway. It is clear that the order below requiring discovery on such a basis, notwithstanding the countervailing considerations which have been discussed, may not stand.
Certiorari granted.
NOTES
[1] There is no claim that the hospital knew the statement was false.