507 So.2d 1180 (1987)
FREEDOM NEWSPAPERS, INC., E. Mac Ramsey, Jr., and Capital Formation Counselors, Inc., Petitioners,
v.
Paul EGLY and Patricia G. Hoiles, Respondents.
Nos. 86-2390, 86-2405.
District Court of Appeal of Florida, Second District.
May 29, 1987.
*1181 Charles M. Phillips, Jr., Clearwater, Alan C. Sundberg, Sylvia H. Walbolt, and Paul E. Lund of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa, for petitioner Freedom Newspapers, Inc.
George K. Rahdert and Bonita M. Riggens of Rahdert, Acosta & Dickson, P.A., St. Petersburg, for petitioners E. Mac Ramsey, Jr. and Capital Formation Counselors, Inc.
Lee L. Haas and James A. Baxter of Baxter, Rinard and Winters, P.A., Clearwater, James Morris of Nichols, Stead, Boileau and Lamb, Pomona, Cal., for respondent Paul Egly.
*1182 Stephen O. Cole of McMullen, Everett, Logan, Marquardt & Cline, P.A., Clearwater, Joseph L. Wyatt, Jr., Mary E. Healy and Antoinette B. Cordero of Hufstedler, Miller, Carlson & Beardsley, Los Angeles, Cal., for respondent Patricia G. Hoiles.
DANAHY, Chief Judge.
Freedom Newspapers, Inc. (Freedom), Capital Formation Counselors, Inc. (CFC), and E. Mac Ramsey, Jr., petition this court for a writ of certiorari to review an order of the circuit court granting certain rights of discovery to respondents, who are plaintiffs in an ongoing California action. We find that the circuit court's order involves no departure from the essential requirements of law and accordingly we deny the consolidated petitions.
Freedom is a closely held California corporation which publishes newspapers in several states including Florida. Its stock is owned exclusively by or for members of the Hoiles family. CFC is a Florida corporation engaged in estate planning, specializing in rendering services to closely-held corporations like Freedom. Ramsey is a certified public accountant and a vice-president of CFC. Respondent Egly is the court-appointed trustee of a trust created under the will of James H. Hoiles, deceased. The trust is funded with Freedom stock received from Clarence Hoiles, also deceased, "patriarch" of the Hoiles family, former chairman of the board of Freedom, father of James Hoiles, and onetime trustee of James Hoiles's trust. Respondent Patricia Hoiles is the widow of James Hoiles and the sole income beneficiary of the trust.
In 1983 the trustee and the income beneficiary of the James Hoiles trust filed objections to the final accounting of the estate of Clarence Hoiles. Shortly thereafter, the beneficiary, Patricia Hoiles, sued the estate of Clarence Hoiles and the trustee filed a similar action against the co-executors of Clarence's estate. The cases have been consolidated for trial. Respondents, who are the plaintiffs in the California action, allege that Clarence Hoiles breached his fiduciary responsibility as trustee. Specifically, they claim that Clarence excluded the trust from participating in Freedom's business opportunities, diverted trust income, mismanaged trust resources, and entered into an agreement restricting the sale of trust-owned Freedom stock. Among the defenses asserted are those of estoppel and laches, based on allegations that Patricia Hoiles failed to take any action during the seventeen-year tenure of Clarence Hoiles' trusteeship. Contending that certain documents in the possession of CFC may contain an explanation for her delay in filing suit, Patricia Hoiles sought discovery of those documents.
Respondents began the proceedings in our circuit court in order to compel Ramsey to answer certain questions put to him during a deposition and to compel Ramsey and CFC to produce certain materials requested in a subpoena duces tecum. Freedom and CFC have resisted compliance with these discovery requests on numerous grounds. The circuit court nevertheless ordered Ramsey to "answer the questions propounded to him which he has previously refused to answer," to "comply with and obey the subpoena duces tecum by answering such other and further similar questions which are related to the subject matter and any areas of discovery that [respondents] were precluded from exploring by the prior objections and assertions of privilege," and to produce the items listed in the subpoena duces tecum.
The proceedings in circuit court were brought under the Uniform Foreign Depositions Law, which Florida has enacted at section 92.251 Florida Statutes (1985). Following rendition of the circuit court's order petitioners initiated appellate review by filing a notice of appeal, reasoning that the order represented a completion of judicial labor in the cause and was thus a "final order" as defined in Rule 9.110, Florida Rules of Appellate Procedure. Respondents maintain that the trial court's order should be treated like any other order compelling discovery and thus that review should be by certiorari. See, e.g., Florida Cypress Gardens, Inc. v. Murphy, 471 So.2d 203 *1183 (Fla. 2d DCA 1985). We agree with respondents.
Under the Uniform Foreign Depositions Law, whenever a litigant in one state desires to depose a witness residing in another state he must first secure the appointment of a commissioner by the court where the litigation originates. He may then apply to the court having personal jurisdiction over the witness for the process necessary to secure the attendance of the witness. Travelers Indemnity Co. v. Hill, 388 So.2d 648 (Fla. 5th DCA 1980). The court where the deposition actually takes place enjoys all necessary powers of enforcement as if the action were taking place in that state, and the law of that state governs any proceedings incident to the deposition. Burns v. Superior Court, 140 Cal. 1, 73 P. 597 (1903); Solliday v. District Court in and for the City and County of Denver, 135 Colo. 489, 313 P.2d 1000 (1957); Wiseman v. American Motors Sales Corp., 103 A.D.2d 230, 479 N.Y.S.2d 528 (1984); Frenkel v. Old Dominion Dairy Products, Inc., 91 Misc.2d 849, 398 N.Y.S.2d 816 (1977); Beatrice Foods Co. v. Proctor & Schwartz, Inc., 309 Pa.Super. 351, 455 A.2d 646 (1983). Even though that be so, the second court operates basically as an auxiliary of the first and an order compelling discovery is not "final" since it does not dispose of all issues pending in the case. It is for this reason that we believe the relatively expedited method of review afforded by certiorari is appropriate here just as if the entire lawsuit had been conducted in Florida courts.
The principal objection posed by Freedom to disclosure of the materials in CFC's possession is that they are protected by the attorney-client privilege, section 90.502 Florida Statutes (1985). Although the staff of CFC are not themselves attorneys, Freedom argues that CFC, in devising an estate plan for Freedom, was acting under the direction of Freedom's attorneys to such an extent that the privilege would extend to CFC. Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984); Pouncy v. State, 353 So.2d 640 (Fla. 3d DCA 1977); Ehrhardt, Florida Evidence § 502.2 (2d ed. 1984).
We find, however, that the trial court's ruling that the privilege does not apply in the present case is supported by competent, substantial evidence, and so must be sustained. Osceola Fruit Distributors v. Mayo, 115 So.2d 760 (Fla. 2d DCA 1959). The record in this case does not support Freedom's position that the retention of CFC was primarily for the purpose of furthering or enhancing the rendition of legal service, or, in other words, that CFC acted essentially as an extension or agent of Freedom's regular legal advisers. It is true that since 1975 Freedom's corporate counsel, John R. Stahr, had been attempting to develop a plan which would insure the continuation of Freedom's business if a member of the Hoiles family died. However, Stahr did not approach CFC to assist in the development of an estate plan. Instead, Freedom was solicited by agents of CFC directly, and independently of Stahr's efforts. Freedom's attorneys were called upon to advise the board of directors whether to retain CFC's services, and Stahr investigated the quality of services rendered by CFC to previous clients before recommending that Freedom retain CFC. This nexus is insufficient to impute the attorney-client privilege to CFC's efforts. Though he may occasionally have monitored the progress of the CFC plan, it is clear from the record that Stahr was not, as Petitioners would have it, "an integral part" of CFC's work. Stahr may have had, in the words of one witness, a "veto power," but only in the sense that Stahr was called upon to advise whether the plan eventually conceived by CFC suited Freedom's needs. He felt that it did not, Freedom agreed, and Stahr's firm eventually devised its own plan for Freedom.
Ramsey, as an officer of CFC, also objected to disclosure on the ground that CFC's methods of acquiring and assimilating information, and ultimately rendering advice based on that information, are closely guarded trade secrets protected by section 90.506 Florida Statutes (1985). The circuit court made a specific finding that *1184 the subject of respondents' requests did not approach the level of trade secrets and, again, that finding has support in the record.
We do not dispute Ramsey's claim that many of the processes by which CFC assimilates and manages information could amount to trade secrets. As an example Ramsey cites Standard & Poor's Corp. v. Commodity Exchange, Inc., 538 F. Supp. 1063 (S.D.N.Y.), aff'd, 683 F.2d 704 (2d Cir.1982), which involved the difficult and costly development of a stock price index widely used as a "barometer" of stock market performance. Furthermore, the definition of "trade secret" extends beyond secret formulae, whether basically statistical as in Standard & Poor's or chemical as in Sun Crete of Florida, Inc. v. Sundeck Products, Inc., 452 So.2d 973 (Fla. 4th DCA 1984). The sometimes nebulous designation "business information" has long been recognized as potentially subject to protection. See, e.g., Orkin Exterminating Co. of South Florida, Inc. v. Truly Nolen, Inc., 117 So.2d 419 (Fla. 3d DCA), cert. denied, 120 So.2d 619 (Fla. 1960). We conclude, however, that the circuit court's decision to make accessible to the respondents the information gathered by CFC does not intrude into the realm of trade secrets.
First, as the circuit court understood, the discovery sought by the respondents is not what CFC does with information such as that provided by the Hoiles family, but the information itself. While even "customer lists" may sometimes constitute trade secrets, East Colonial Refuse Service, Inc. v. Velocci, 416 So.2d 1276 (Fla. 5th DCA 1982), in the present case it is simply no secret that Freedom and its Hoiles family owners were at one time customers of CFC. Likewise, what those owners may have told CFC is not in and of itself a trade secret. Further, we are not persuaded that the manner by which CFC solicits such information is sufficiently esoteric to constitute a trade secret. As the circuit judge stated, "All I heard was, we have professionals, we work together, and we've interviewed people. And I can just say to that, so what? Lawyers do that every day."
Second, it is important to view the trade secret cases cited by Ramsey in the context in which they arose. Many of them, such as Standard & Poor's and Sun Crete, involved suits between competitors. The purpose underlying the trade secrets privilege established by section 90.506 is to prohibit a party to a suit from obtaining valuable information that could be used to its own advantage, relying upon the duty of a witness to answer questions truthfully. See Law Revision Council Note to § 90.506, quoted in Fortune Personnel Agency of Ft. Lauderdale, Inc. v. Sun Tech, Inc., of South Florida, 423 So.2d 545, 546 n. 6 (Fla. 4th DCA 1982). The likelihood of such an abuse of the discovery process is lessened where, as here, the party seeking discovery appears to have no real interest in the business techniques of the witness or his employer.
Finally, the privilege provided by section 90.506 is not absolute. Fortune Personnel Agency. Even trade secret information may be released upon a showing of sufficient need for the information. East Colonial Refuse Service. The actions of the various Hoiles family members in furtherance of their financial well-being are at the heart of the California litigation. Although petitioners attempt to characterize respondents' discovery requests as, basically, a "fishing expedition," we believe respondents have demonstrated the relevance of the materials sought and have persuasively argued that there is no other practicable means of obtaining the information.
We conclude our discussion of this issue with one caveat. Petitioners' objections to what they viewed as disclosure of trade secrets were strenuous and comprehensive, encompassing nearly any question of substance posed to Ramsey during his deposition. While we may have undermined most of those objections, it is conceivable that respondents' future inquiries could cross the borderline between non-privileged information-gathering and privileged techniques of computation or processing. We therefore decline to close the door to petitioners *1185 to make bona fide, specific objections to any inquiries which go beyond the scope of the trial court's order or this opinion. Further, should such good faith, specific objections be made the circuit court has ample authority to conduct in camera inspection of items toward which the privilege is claimed, Austin v. Barnett Bank of South Florida, N.A., 472 So.2d 830 (Fla. 4th DCA 1985), and in appropriate circumstances the court is always able to enter such protective orders as may be necessary.
Last, petitioners argue that respondents' request to produce is unduly burdensome, particularly given CFC's non-party status. Respondents seek access to one hundred boxes of information amassed over several years. We cannot say, however, that the trial court's refusal to accept this argument constitutes an abuse of discretion. Complaints of undue hardship relative to discovery are inescapably based on the particular facts before the trial court and, as such, require case-by-case resolution. Union Fidelity Life Insurance Co. v. Seay, 378 So.2d 1268 (Fla. 2d DCA 1979). In resolving such controversies the court should apply a balancing test between the need for the information and the interests that would be preserved by nondisclosure. North Miami General Hospital v. Royal Palm Beach Colony, Inc., 397 So.2d 1033 (Fla. 3d DCA 1981). Suffice it to say that these two examples involve intrusions far more egregious than does respondents' discovery request. The North Miami General Hospital case involved not only problems of oppressiveness but also potential breaches of patient confidentiality, which the court found outweighed the respondents' "ephemeral" and "nebulous" showings of need. 397 So.2d 1033, 1034-5. In Union Fidelity the respondent sought to compel production of all records concerning the denial of coverage for claims filed under a particular policy language, without limitation as to time or to the number of claims, amounting to some 45,000 insurance policies encoded on computer software and stored in another state. Contrast that with the present case where the records, although possibly voluminous, deal with a single client over a specific, limited period of time.
Respondents point out that petitioners failed to move to quash the subpoena or seek a protective order prior to the scheduled time for discovery, as required by rules 1.410(b) and (d), Florida Rules of Civil Procedure. This court has held that this constitutes a waiver of any objection based on unreasonable burden. Don Mott Agency, Inc. v. Pullum, 352 So.2d 107 (Fla. 2d DCA 1977).
For the reasons we have given, the consolidated petitions for certiorari are denied.
CAMPBELL and SCHOONOVER, JJ., concur.