The PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
Plaintiff,

v.

Renwick T. NELSON, II, Defendant.

No. Civ.A. 97–1537.

United States District Court,
D. New Jersey.

July 8, 1998.

As Amended, July 16, 1998.

Reid L. Ashinoff, Gary Meyerhoff, Sonnenschein, Nath & Rosenthal, New York City, Edward A. Zunz, Riker, Danzing, Scherer, Hyland & Perretti, Morristown, NJ, for plaintiff.

Lawrence M. Rolnick, Lowenstein, Sandler, Kohl, Fisher, & Boylan, Roseland, NJ, Michael Keane, Keane & Reese, P.A., St. Petersburg, FL, for defendant.

## *OPINION*

WOLIN, District Judge.

This case is before the Court on the motion of plaintiff The Prudential Insurance Company of America ("Prudential") to modify the Consent Decree between the defendant Renwick T. Nelson, II ("Nelson") and Prudential to add procedures governing Nelson's testimony. Nelson and Prudential entered into the Consent Decree that restrained Nelson from disclosing privileged information unless and until ordered otherwise by a court of competent jurisdiction. Because the scope and vitality of the Consent Decree have been challenged by a California court, this Court must further interpret the Consent Decree, particularly the provision "a court of competent jurisdiction." For the reasons stated herein, the Court will resolve the concomitant issues of due process and attorney-client privilege and will grant Prudential's application.

## BACKGROUND

### A. The Renwick Nelson Action

Nelson is a former in-house Prudential attorney. On October 18 and 19, 1996, Nelson provided privileged and confidential information in a deposition to representatives of the Florida Department of Insurance and Attorney General. On March 27, 1997, Prudential initiated this action seeking, among other things, temporary and permanent injunctive relief prohibiting Nelson from making disclosures of Prudential's confidential, proprietary and privileged information. This Court entered a Temporary Restraining Or-

der ("TRO") on March 27, 1997 and, thereafter, a Preliminary Injunction on May 23, 1997, enjoining Nelson from making disclosures of Prudential's confidential, proprietary and privileged information including information protected by Prudential's attorney-client, work product or other privileges.

On May 22, 1998, Prudential and Nelson stipulated to the entry of a Consent Decree which permanently enjoins and restrains Nelson from disclosing any confidential, proprietary or privileged information belonging to Prudential. The Consent Decree provides, in relevant part, that:

> in the event Nelson is requested or required to give any testimony or provide information in connection with any judicial, investigative or governmental proceeding regarding the business of, or claims against or concerning, Prudential that he (i) first promptly notify Prudential's General Counsel ... (ii) cooperate with Prudential as necessary so that Prudential's counsel may participate in any proceeding or other setting in which information or testimony is being requested or required; and (iii) follow all instructions given by Prudential's counsel regarding the assertion of the attorney-client privilege, work product doctrine, and any other privileges or doctrines, unless and until ordered otherwise by a court of competent jurisdiction;

(May 22, 1998 Consent Decree at 2–3.) Finally, and most important to the resolution of the jurisdiction issue, the parties consented that "this Court shall retain exclusive jurisdiction to construe the Consent Decree and enforce its terms and provisions in *all* respects." (*Id.* at 3.) (emphasis added).

The Consent Decree was supplemented by the Court's June 10, 1998 Explanatory Order. This Order construed the Consent Decree to the extent that it prohibited Nelson from traveling outside the jurisdiction (Flori-

da) wherein he is subject to compulsory process to another jurisdiction (i.e., California) for the purpose of providing deposition testimony to private litigants in a civil action where he is under no legal compulsion to do so. No limitation on deposition testimony, except as to the circumscribed privileges, subject to compulsory process was prohibited. Moreover, prior to the entry of the Consent Decree and the Explanatory Order, Nelson was represented by counsel who was afforded an opportunity to argue the scope of the relief granted.

## B. The Jacobson Action

On October 10, 1997, Samuel Jacobson and Jerry Kayle (the "Jacobson plaintiffs")[1] filed the action *Samuel Jacobson and Jerry P. Kayle v. The Prudential Insurance Company of America, George Alexopoulos, Mark Gitig, and Does 1 through 500*, Los Angeles Superior Court Case No. BC 179323 (the "*Jacobson* action"). The Jacobson plaintiffs bring claims relating to the purchase of two life insurance policies in 1985 and seek to depose Nelson. Apparently Nelson was asked by the *Jacobson* plaintiffs to make an agreement to travel to California and give a deposition. Prudential believed such an agreement would violate the May 22, 1998 Consent Decree and applied to this Court for an order applying the Consent Decree to the *Jacobson* plaintiffs' proposed agreement. Nelson, through his counsel, stipulated and this Court agreed that an agreement by Nelson to voluntarily submit to a deposition in California would violate the Consent Decree. (June 10, 1998 Order.) Thereafter, the *Jacobson* plaintiffs served Nelson with a Florida deposition subpoena.

Pursuant to a motion by the *Jacobson* plaintiffs in California Superior Court, a Referee issued a Fourth Report and Recommendation to the Superior Court ("Fourth Report").[2] The Fourth Report recommended

---

1. Counsel for the Jacobson plaintiffs sent a letter to Reid Ashinoff dated June 26, 1998. While the actions of this Court are discussed in the letter, the Court was not afforded a courtesy copy by counsel for the Jacobson plaintiffs. Rather, a courtesy copy was forwarded by Nelson's counsel. The Court will address the concerns in the letter, notwithstanding the letter's circuitous

route. The Court understands that the letter does not signify an intention by the Jacobson plaintiffs to submit to the jurisdiction of this Court.

2. The Referee can issue a Report and Recommendation from which the parties have five days to appeal. If no appeal is taken, the Report and

that while the Florida deposition would proceed in Florida, the California Superior Court Referee could telephonically rule on privilege objections raised during Nelson's deposition and order Nelson to answer the questions before any judicial review of the privilege claimed. Specifically, the Fourth Report provides that if "Prudential's counsel instructs Mr. Nelson not to answer a question, then either party may call the Referee 'to have the objection ruled upon,' and that Nelson could be 'ordered to answer any question to which Prudential's objection has been overruled by the referee....'" (Fourth Report at 3:22–4:12.) Additionally, the Fourth Report permits Prudential to object to the Referee's rulings after Nelson testified over a privilege claim and to petition the Superior Court to "strike and seal any answer made over Prudential's objection that was improperly overruled by the Referee." (*Id.* at 4:9–12.) Thus, the Fourth report permits disclosure before Prudential can seek judicial review of the Referee's rulings.

On June 17, 1998, Prudential applied to this Court for a TRO to enjoin Nelson from being deposed in the *Jacobson* action. Prudential contended that the procedures for privilege objections in the Fourth Report violated the Court's May 22, 1998 Consent Decree. The Court issued a TRO enjoining Nelson from being deposed until further order of the Court and scheduled a hearing for June 26, 1998. On June 18, 1998, Nelson complied with the Florida subpoena and appeared at the designated time and place for the deposition. Nelson abided by the terms of this Court's TRO and declined to be deposed. At the Florida proceeding, the *Jacobson* plaintiffs' counsel served Nelson with a summons naming him as a Doe defendant in the *Jacobson* action with a notice of deposition to Nelson, now a party, for June 24, 1998, two days prior to the Court's June 26 hearing.

On June 19, 1998, the *Jacobson* plaintiffs brought an *ex parte* application before the Referee, to shorten the time in which to schedule a deposition, so that Nelson's deposition could be taken on June 24, 1998. The

*Jacobson* plaintiffs also requested sanctions against Prudential for obstructing the Nelson deposition with the June 17 TRO. On June 19, 1998, the Referee issued a Fifth Report and Recommendation to the Superior Court ("Fifth Report") granting the *Jacobson* plaintiff's application and ordering Nelson's deposition to proceed on Wednesday, June 24, 1998. The Fifth Report provides that Nelson's deposition proceed "in accordance with the findings, rulings and recommendations" in the Fourth Report. (Fifth Report at 2:3–2:10.) The Fifth Report recommends "that the Superior Court approve this Report of the referee no later than June 22, 1998." (*Id.* at 3:13–3:16) The Referee found that:

Judge Wolin's attempts to interfere with the jurisdiction of this Court, interfere with the enforcement of California's Discovery Act and other laws, and interfere with this Court's inherent power to control proceedings before it, are ineffective and without power to bind or otherwise control these proceedings or the parties' duty to abide by this Court's orders. The plaintiffs in this case were not parties to Judge Wolin's proceedings, not parties to the consent decree he seeks to enforce, and not otherwise subject to the jurisdiction of his court. Given those facts, his orders cannot bind the right of plaintiffs in this case to conduct all necessary discovery as [prescribed] by California law, and cannot excuse the duty of Prudential to comply with Orders to facilitate such discovery.

(*Id.* at 2:23–3:10.)

On June 23, 1998 the Superior Court adopted and signed the Fourth and Fifth reports over Prudential's objections, and also issued an order which modifies but effectively reaffirms the procedures of the Fourth Report. Thus, Nelson was subject to the conflicting orders of this Court and the California Superior Court.

Subsequently, Prudential filed a Petition For Peremptory Writ of Prohibition to the California Court of Appeal, seeking a stay of the Nelson deposition and review of the Superior Court's orders. The Court of Appeal declined to accept the case. On June 24,

Recommendation becomes the order of the court. If an appeal is taken, the trial judge

decides whether to adopt or overrule the Report and Recommendation.

1998, Nelson again abided by this Court's TRO and declined to be deposed.

On June 29, 1998, this Court held a hearing at which it commented on the heightened tone of the rhetoric that had caused two courts to issue orders in direct conflict with each other, and to place Nelson, the subject of the deposition, in a most difficult position. During that proceeding, the Court expressed its desire to cooperate with the California court and likewise anticipated that the California court would cooperate with this Court. Moreover, the Court noted that principles of due process could be recognized and respected without compromising the powers of either this Court or the California court. To ensure the preservation of Prudential's privileges, the Court will resolve jurisdictional standards and determine deposition procedures in accordance with notions of due process and fairness.

## OVERVIEW

■ The deposition testimony of Nelson has become a lightning rod of contention that has ignited the legal flames of at least two jurisdictions and has the potential to engulf a host of others. At the very outset, it is important to recognize that Nelson is not the ordinary witness possessed of privileged information. Rather, he is an attorney who prior to his separation from employment, served Prudential in a meaningful capacity and has information beyond that of the ordinary witness who may have been exposed to privileged information during his employment. Because of the trust and confidence that Prudential reposed in Nelson and because of his free access to information that strikes at the very core of this litigation, this Court must subject his potential testimony to a heightened level of scrutiny.[3] Whether he be termed as a "fiduciary" as proffered by Prudential or labeled otherwise is unimportant. What truly matters is the substance of his testimony and the protection to which it is entitled.

## DISCUSSION

Prudential requests that the May 22, 1998 Consent Decree be modified. The Consent Decree sets forth procedures to permit Nelson to give testimony regarding the business of, or claims against or concerning Prudential, but permanently enjoins and restrains Nelson from disclosure of any confidential or proprietary information belonging to Prudential, "including, but not limited to, information protected by Prudential's attorney-client, work product, or other privileges." (May 22, 1998 Consent Decree at 1.) The Consent Decree prohibits Nelson from testifying once Prudential has asserted a privilege claim, "unless and until ordered otherwise by a court of competent jurisdiction." (*Id.* at 2.) Prudential seeks to require this Court rather than "a court of competent jurisdiction" to interpret the Consent Decree and rule on any claims of privilege or protection asserted by Prudential. Moreover, Prudential requests that Nelson not be permitted to respond to inquiries to which Prudential has asserted a claim of privilege or protection until this Court has ruled he may do so. Prudential also requests that Prudential and Nelson be enjoined from litigating the underlying merits of any assertion of privilege by Prudential in connection with Nelson's testimony in any court other than this Court.

Prudential contends that the California court order contradicts the Consent Decree because it requires Nelson to make arguably privileged disclosures without providing Prudential the opportunity to fully substantiate its claim of privilege or to appeal. Prudential argues that this procedure violates the sanctity of privileged communications and affronts the supremacy of the federal courts. The Jacobson plaintiffs contend that this Court's *ex parte* orders have delayed and prejudiced their right to get Nelson's sworn testimony. The Jacobson plaintiffs request that the Court allow state courts with pending litigation to resolve disputes between

---

**3.** Likewise, the California Supreme Court agrees that arguably privileged testimony should be subjected to a heightened level of scrutiny. *See Roberts v. Super. Ct.,* 9 Cal.3d 330, 336, 107 Cal.Rptr. 309, 508 P.2d 309 (1973) (concluding that "[t]he need for the availability of prerogative writs in discovery cases where an order of the trial court granting discovery allegedly violates a privilege of the party against whom discovery is granted, is obvious.").

Prudential and civil litigants who are not parties before this Court. Additionally, the Jacobson plaintiffs complain that Prudential's tactics are sanctionable, amount to an obstruction of justice, and conflict with California's discovery objectives.

Prior to the current motion, Prudential had argued that a Florida court applying Florida law should rule on objections at Nelson's deposition. Prudential now requests that this Court rule on all privilege objections. The Jacobson plaintiffs complain that to subject Nelson to this Court's interpretation of which discovery and privilege laws should apply to Nelson's testimony in cases around the country and that for this Court to establish rules and procedures that govern Nelson's obligations to testify in policyholder cases is contrary to *Baker v. General Motors,* —— U.S. ——, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998).[4] The Jacobson plaintiffs argue that because Prudential and Nelson are the only parties to the Consent Decree, this Court's interpretation of the Consent Decree should not prejudice the rights of plaintiffs in other forums to obtain Nelson's deposition pursuant to the laws of that forum. The Jacobson plaintiffs suggest that this Court is making it so difficult for litigants to obtain Nelson's testimony that it appears that Prudential and this Court are seeking to delay or preclude Nelson's testimony. The Court disagrees.

## A. The California State Court Is Not a Court of Competent Jurisdiction To Establish the Guidelines of Nelson's Florida Deposition and Rule on Issues of Privilege Because It Lacks Jurisdiction Over Nelson

■ The *Jacobson* plaintiff's arguments misconstrue the phrase "court of competent jurisdiction" as employed in the Consent Decree. In the general sense, a California court is clearly a court of competent jurisdiction. However, as that term is used in the Consent Decree, California is not a court of competent jurisdiction because it lacks jurisdiction over Nelson.

This is a case which currently implicates the laws of California, New Jersey, and Florida, but potentially could involve the laws of many more states. Hence, dispositive issues must be determined as if they had been brought in state court in the same state in which the federal court sits, that being New Jersey. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, *cert. denied,* 305 U.S. 637, 59 S.Ct. 108, 83 L.Ed. 410 (1938). The same requirement applies to questions of choice of law. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (extending to the special case of choice of law the general principle of deference to local law set forth in *Erie R. Co. v. Tompkins, supra* ), *cert. denied,* 316 U.S. 685, 62 S.Ct. 1284, 86 L.Ed. 1757 (1942); *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975).

■ New Jersey courts have implemented the governmental-interest approach to choice of law questions, which requires application of the law of the state with the greatest interest in resolving the particular issue raised by the underlying litigation.[5] *See Gantes v. Kason Corp.,* 145 N.J. 478, 484, 679 A.2d 106 (1996) (citing, in part, *Veazey v. Doremus,* 103 N.J. 244, 247–49, 510 A.2d 1187 (1986)); *see, e.g., Mellk v. Sarahson,* 49 N.J. 226, 229 A.2d 625 (1967) (concluding that New Jersey's concern for protecting the plaintiff, who was a New Jersey domiciliary, gave it a sufficient interest in the application of New Jersey law; Ohio had no interest in the application of its guest statute); *Pfau v. Trent Aluminum Co.,* 55 N.J. 511, 263 A.2d

---

**4.** *Smith v. The Super. Ct. of Fresno County,* 41 Cal.App.4th 1014, 49 Cal.Rptr.2d 20 (1996) is based on the same injunction as *Baker.* The holdings are similar, and the Court's analysis of *Baker* applies to *Smith* as well.

**5.** New Jersey courts have rejected the historical approach of resolving choice of law questions by rigidly applying the law of the forum where the wrong occurred, known as the *lex loci delicti* approach. *See D'Agostino v. Johnson & Johnson,*

*Inc.,* 133 N.J. 516, 523, 628 A.2d 305 (1993); *Veazey v. Doremus,* 103 N.J. 244, 247, 510 A.2d 1187 (1986). The traditional rule was abandoned in favor of the more flexible "governmental-interest" analysis set forth in the Restatement (Second) of the Conflict of Laws § 188 (1971). *See, e.g., McFarland v. Miller,* 14 F.3d 912, 917 (3d Cir.1994) (citing *Veazey,* 103 N.J. at 247, 510 A.2d 1187).

129 (1970) (concluding that New Jersey might have an interest in enforcing a New Jersey 'host's duty to his guests,' although New Jersey did not have an interest in protecting a plaintiff who was a Connecticut citizen).

■ The governmental-interest analysis is twofold: the court first determines each related jurisdiction's governmental policies as evidenced by the laws of that jurisdiction and, second, the factual contacts between each related jurisdiction and the parties. *See Henry v. Richardson–Merrell, Inc.,* 508 F.2d 28, 32 (3d Cir.1975). Under New Jersey law, a choice of law provision will not be honored: (1) if the state chosen has no substantial relationship to the parties or the transaction; or (2) application of the law chosen would conflict with a fundamental public policy of a state having a greater interest in a determination of ·a particular issue and such state would be applicable in the absence of the choice of law provision under the governmental-interest analysis. *See Stanton v. Rich Baker Berman & Co., P.A.,* 876 F.Supp. 1373, 1381 (D.N.J.1995) (citations omitted). "If a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply. Consequently, the qualitative, not the quantitative nature of a state's contacts ultimately determines whether its law should apply." *D'Agostino,* 133 N.J. at 523, 628 A.2d 305; *see Veazey,* 103 N.J. at 248, 510 A.2d 1187; *Henry,* 508 F.2d at 32 (citing *Mullane v. Stavola,* 101 N.J.Super. 184, 243 A.2d 842 (1968)). If the application of a state's law to the facts of a particular case will further the state's policies, only then is a state considered interested in a matter. *See D'Agostino,* 133 N.J. at 523, 628 A.2d 305.

■ The initial prong of the governmental-interest analysis requires a threshold inquiry into whether. an actual conflict exists between the laws of, in the current case, California, New Jersey, and Florida. This determination is made on an issue-by-issue basis. *See Gantes,* 145 N.J. at 484, 679 A.2d 106 (citing *Veazey,* 103 N.J. at 248, 510 A.2d 1187). In the absence of an actual conflict, the law of the forum state—in this case, New

Jersey—is applied by the district court. *See Schreiber v. Camm,* 848 F.Supp. 1170, 1174 (D.N.J.1994) (citing, in part, *Schum v. Bailey,* 578 F.2d 493, 497 (3d Cir.1978)).

■ New Jersey and Florida have significant interest in this dispute. Both states have factual contacts with this case. Nelson is a Florida resident, who received privileged information in New Jersey from Prudential and, as a result of the receipt of privileged information, owed Prudential, a New Jersey corporation, a self-imposed obligation of loyalty. Notwithstanding this duty of loyalty, Nelson thereafter wrongfully divulged privileged information in Florida. Pending is his deposition in Florida pursuant to a Florida subpoena for a California state court case. Assuredly, under choice of law principles, this Court has jurisdiction over Nelson. Likewise, Florida has jurisdiction over Nelson through the valid service of a non-party subpoena served pursuant to California's Code of Civil Procedure which states, in pertinent part:

§ 2026. Oral depositions in another state or territory of the United States

(b)(2) If the deponent is not a party to the action or an officer, director, managing agent, or employee of a party, a party serving a deposition notice under this section shall use any process and procedure required and available under the laws of the state, territory, or insular possession where the deposition is to be taken to compel the deponent to attend and to testify, as well as to produce any document or tangible thing for inspection, copying, and related activity.

Cal.Code Civ.P. § 2026(b)(2). Thus, California's Code of Civil Procedure addressed the need to seek assistance of other states in the event of a non-party deposition. Moreover, these procedures are in accord with Florida law. *See Freedom Newspapers, Inc. v. Egly,* 507 So.2d 1180, 1183 (Fla.Dist.Ct.App.1987) (finding that "[t]he court where the deposition actually takes place enjoys all necessary powers of enforcement as if the action were taking place in that state, and the law of that

state governs any proceedings incident to the deposition.") (citations omitted).

■ To protect the integrity of the Consent Decree, Prudential also required that the decision on questions of privilege be relegated to courts of competent jurisdiction. Thus, the issue before the Court is the choice of law to be applied where a state's rules of civil procedure provide for an out-of-state non-party deposition.

Here, the choice of law clearly lies between New Jersey and Florida. Because the Nelson litigation was initiated in New Jersey, New Jersey's choice of law principles govern. The Jacobson plaintiffs attempt to insinuate California in the choice of law mix by adding Nelson as a Doe defendant. This obvious legal ploy is a meaningless subterfuge and a legal nullity; it does not serve to convert a non-party witness into a witness subject to the jurisdiction of California law. Even the Referee, Judge Fujisaki, expressed some concerns as to whether or not Nelson was an appropriate Doe amendment. During a proceeding before Judge Fujisaki on June 19, 1998, he stated:

> Well, I said earlier at our first or second hearing on the taking of Mr. Nelson's deposition that it was my opinion that California did not have the ability to order Mr. Nelson to come to California to be deposed for lack of jurisdiction. And I'm not prepared to find jurisdiction simply by substituting him as a doe defendant, particularly over defendant's objection at this late day.

(Transcript of Proceedings, June 19, 1998.) Thus, Nelson remains a non-party witness who is not subject to California jurisdiction or compulsory process by a California court.

Pursuant to applicable choice of law principles, California is an inappropriate forum to establish the guidelines of Nelson's Florida deposition and rule on issues of privilege. Consequently, California's insistence that the discovery procedures established by the Referee and adopted by the California Superior Court be adhered to violates the Consent Decree.

Although New Jersey and Florida both have jurisdiction over Nelson, the governmental-interest analysis directs that Florida law as applied by a Florida court will govern Nelson's deposition. Florida has the greatest interest in Nelson's deposition. The factual contacts with Florida are substantial; Nelson is a Florida resident, served with a Florida subpoena, who will be deposed in Florida. Moreover, Federal Rule of Civil Procedure 37(a)(1) suggests that a Florida court would be the appropriate court to decide issues of privilege for a Florida deposition. Rule 37(a)(1) provides that an application for and order compelling discovery of a non-party witness must be made to the court in the district where the discovery is being, or is to be, taken. *See* Fed. R. Civ. P. 37(a)(1).

The *Jacobson* plaintiffs' reliance on *Baker* is misplaced. In *Baker*, the Supreme Court reversed enforcement of a Michigan state court judgment, pursuant to a consent decree, in which General Motors sought to prevent a former General Motors executive from testifying against General Motors in cases not before the Michigan state court. In a Missouri federal court, General Motors argued that the court should not order the former employee's testimony because it would violate the Michigan consent decree. The Supreme Court concluded that the Michigan state court consent decree was not entitled to enforcement under the full faith and credit clause of the Constitution. The Supreme Court held that the Michigan injunction could not be enforced against plaintiffs in other states because it had no effect on another jurisdiction's determination of the admissibility of that testimony. The Supreme Court also held that a foreign court cannot "shield a witness from another jurisdiction's subpoena power."

While *Baker* is illuminating, it is not controlling in this circumstance for several reasons. Notably, the state courts in *Baker* did not lack jurisdiction over the deponent. Furthermore, *Baker* did not involve the disclosure of information protected by the attorney-client privilege. Nelson's deposition procedure ordered by the California state court permits the disclosure of all information, including arguably privileged information. Moreover, the General Motors consent decree effectuated a total prohibition of the

former employee's testimony. The consent decree between General Motors and the former employee included a permanent injunction prohibiting the former employee from testifying against General Motors in any future litigation involving General Motors with the exception of a pending action in Georgia. By contrast, this Court's Consent Decree prevents the disclosure of only privileged information and does not abridge the rights of litigants to obtain non-privileged information.

**B. Enforcement of The Consent Decree Requires that this Court Ensure the Preservation of Prudential's Privileges**

■ Pursuant to the All–Writs Act, 28 U.S.C. § 1651 [6] and the exceptions to the Anti–Injunction Act, § 28 U.S.C. § 2283,[7] this Court may issue orders necessary in aid of its jurisdiction. *See* 28 U.S.C. § 1651; 28 U.S.C. § 2283; *see, e.g., United States v. New York Telephone Co.,* 434 U.S. 159, 172–74, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) (determining that "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice ...") (citation omitted); *In re The Prudential Ins. Co. of Am. Sales Practices Litig.,* No. 97–5264 at 15–16 (3d Cir. May 22, 1997) (upholding an injunction by this Court, pursuant to the All–Writs Act, of a media outreach program by the California Department of Insurance). The Nelson case is intertwined in a class action, *In re The Prudential Insurance Company of America Sales Practices Litigation,* a complex multidistrict litigation.[8] The Court has the power to enjoin proceedings in other jurisdictions that threaten to disrupt the orderly resolution of this litigation. *See, e.g., Carlough v. Amchem Prod., Inc.,* 10 F.3d 189, 204 (3d Cir.1993) (finding that in asbestos class action in federal court, the court could enjoin a separate state court class action pursuant to the All–Writs Act and the Anti–Injunction Act); *In re Baldwin–United Corp.,* 770 F.2d 328, 341 (2d Cir.1985) (concluding that under the All–Writs Act, a district court with proper jurisdiction over a case, could enjoin state officials from bringing actions in state court). Thus, the Court has the power to enter an order to modify the Consent Decree.[9]

■ Additionally, enforcement of an order may require a federal court to enter orders which restrict state court discovery. *See, e.g., ONBANCorp., Inc. v. Holtzman,* 1997 WL 381779, at *7–8 (N.D.N.Y. June 27, 1997) (under All–Writs Act and Anti–Injunction Act, federal court enjoined state discovery to effectuate terms of federal confidentiality order) *aff'd.* 125 F.3d 844, 1997 WL 624863 (2d Cir.1997); *Sperry Rand Corp. v. Rothlein,* 288 F.2d 245, 248–49 (2d Cir.1961)

---

**6.** The All–Writs Act in part provides that:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651.

**7.** The Anti–Injunction Act provides that:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

**8.** This Court's management of the class action and all the related litigation is, indeed, an immense task. In this case, on March 17, 1997, the Court certified the Class and found the Class Settlement to be fair. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp.

450 (D.N.J. 1997). The Class Settlement provides two forms of remediation, Alternative Dispute Resolution ("ADR") and Basic Claim Relief ("BCR"). Approximately 1,600,000 policyholders out of more than eight million class members have elected to participate in either ADR or BCR. The Court oversees this ongoing settlement process. Furthermore, more than 23,000 class members have opted out of the settlement; over 500 independent actions, involving over 1,000 plaintiffs, have been filed against Prudential in courts around the country. The Court is continuously involved with opt-out litigation as cases are transferred to this Court by the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, for consolidated pretrial proceedings.

**9.** The May 22, 1998 Consent Decree provided that the parties consented that this Court shall retain exclusive jurisdiction to construe the Decree and to enforce its terms and provisions in all respects.

(under the All–Writs Act and the Anti–Injunction Act, federal court enjoined plaintiff from using materials obtained through federal discovery in state court action); *Harris v. Wells,* 764 F.Supp. 743, 745 (D.Conn.1991) (under the All–Writs Act, court granted preliminary injunction to prevent state court discovery which interfered with federal court's existing discovery order in complex litigation).

■ Prudential urges this Court to interpret the Consent Decree more broadly than is warranted. Although this Court is a court of competent jurisdiction, state courts are equally courts of competent jurisdiction. No provisions in the Consent Decree direct or require the Court to be the sole arbiter of privilege issues. To substitute the "District Court for the District of New Jersey" in place of "a court of competent jurisdiction" is a narrow interpretation of the Consent Decree that this Court declines to adopt. Such a restrictive approach disserves the spirit of comity required of parallel systems of justice. Although this Court has the authority to decide issues of privilege, the more sound, expeditious, and efficient judicial method is to permit state courts of competent jurisdiction to make such decisions when their rules of civil procedure provide for that determination. Absent such rules, this Court must decide questions of privilege.

## C. The Court Will Modify the Consent Decree to Incorporate Deposition Procedures

■ In the Overview of this Opinion, the Court expressed the need for heightened scrutiny of Nelson's testimony. The delicate balance between a probing question and Prudential's assertion of privilege is self-evident. Thus, because the California deposition procedure deprives Prudential of a full and fair opportunity to litigate its claims of privilege, the Court rejects this procedure as delineated in the Referee's Fourth Report and will substitute in its place guidelines for the deposition of Nelson, a non-party witness, who

has consented to not disclose privileged information.

One of the purposes of the discovery rule is to prevent trial by surprise and to permit facts to be elicited in advance of trial. Here, the Jacobson plaintiffs require Nelson's deposition not only to elicit facts prior to trial, but also to use Nelson's deposition testimony at trial to expose the full flavor of Prudential's alleged conspiracy. The Jacobson plaintiffs seek Nelson's deposition testimony assumedly to read it to the jury because Nelson will be "unavailable" in the legal sense. *See* Fed.R.Civ.P. 32(a)(3). Nevertheless, even if Nelson were available, privileged information would have to be suppressed.[10]

The Federal Rules of Civil Procedure particularly Rules 30, 37(a)(1), and 37(a)(2) provide the Court with guidance as to the conduct of non-party depositions. Rule 30(d)(1) permits a party to instruct a deponent not to answer only when necessary to preserve a privilege. *See* Fed.R.Civ.P. 30(d)(1). Rule 37(a)(1) designates the appropriate court to hear a motion to compel disclosure or discovery. *See* Fed.R.Civ.P. 37(a)(1). Rule 37(a)(2) provides the means to compel disclosure and permits sanctions when appropriate. *See* Fed.R.Civ.P. 37(a)(2).

Depositions, the scope of depositions, and lawyer conduct during the course of depositions has long been a source of abuse subject to court intervention and regulation. *See Hall v. Clifton Precision,* 150 F.R.D. 525, 526 (E.D.Pa.1993). Respect for attorney-client communications is so ingrained within our legal system that to repeat that it is a well-established privilege almost seems superfluous. With very few exceptions, notably the crime/fraud exception, the attorney-client privilege prevents the disclosure of confidential information. Unless otherwise required, questions of privilege in civil actions should be determined in accordance with state law. *See* Fed.R.Evid. 501.

Because Nelson through his employment possessed privileged information of substantial importance and has consented not to divulge it, to abrogate the attorney-client

---

**10.** Indeed, as the Supreme Court recently held, the attorney-client privilege survives even after death. *See Swidler & Berlin v. United States,* — U.S. ——, 118 S.Ct. 2081, 2083, 141 L.Ed.2d 379 (1998).

privilege without a full and fair opportunity to challenge the disclosure of the arguably privileged information would seriously undermine the privilege and inflict grave harm on Prudential. Thus, faced with nationwide litigation, this Court must ensure Prudential that the resolution of the issue of privilege is fair to all parties. Towards that end, the guidelines for depositions and the assertion of an objection based on privilege are as follows:

1. An objection of privilege shall be reserved for later determination. The deposition shall be continuous and all objections based on privilege shall be accumulated and brought before a court of competent jurisdiction after the deposition is completed.

2. The appropriate court of competent jurisdiction to determine objections based on privilege for a non-party shall be made to the court in the state where the discovery is being, or is to be, taken.

3. In the event the objection to privilege is not sustained, Prudential may avail itself of the appellate process provided by the court of intermediate appeal in the state where the discovery is being taken. Such appeal will be filed on an expedited basis and in no event later than five business days from the date of denial of the claim of privilege.

4. If the court of intermediate appeal refuses to hear Prudential's application or denies the objection based on privilege, then the non-party witness shall promptly answer the objected-to question.

The brief appellate review process provides the heightened scrutiny required by this opinion. The delay in discovery, if any, is minimal but necessary to ensure that a former in-house counsel cannot divulge privileged information that could only have been gained through his employment. This is especially true in a circumstance where, as here, litigation touches on the border of every state in the nation. Without some uni-

formity to the process, the opportunity for chaos is manifest.

Here, Nelson, a non-party witness, was served with a Florida subpoena issued pursuant to the California Code of Civil Procedure. Under New Jersey's choice of law principles, Florida's analog to California's Superior Court is the appropriate court of competent jurisdiction to decide issues of privilege. Any appeal by Prudential of an adverse ruling must be made to a Florida intermediate court of appeal on an expedited basis within the allotted time frame.

## CONCLUSION

This Court has through the application of choice of law principles decided that the appropriate court of competent jurisdiction to determine an issue of privilege in regard to Nelson's testimony is a Florida court. The California court lacks jurisdiction over Nelson and the *Jacobson* plaintiffs' attempt to gain jurisdiction over Nelson through an amended complaint is a legal nullity. Adherence to the spirit of comity dictates that the California state court defer to this Court and that the California court abate all actions that conflict or interfere with this Opinion.

The Nelson deposition shall resume forthwith and Nelson is no longer restrained from participation provided that the deposition is conducted pursuant to the guidelines of this Opinion. The Court retains exclusive jurisdiction in the event further relief is required.[11]

An appropriate Order is attached.

### *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 8th day of July, 1998

ORDERED that Nelson is no longer restrained from participation in the deposition at issue provided that the deposition is conducted pursuant to the guidelines of this Opinion; and it is further

---

**11.** Moreover, should issues of privilege occur with other non-party former Prudential employees incident to the multidistrict litigation before this Court (styled as *In re The Prudential Insurance Company of America Sales Practices Litiga-*

*tion,* MDL No. 1061, Master Docket No. 95–4704), the Court, in accordance with time-honored choice of law principles, will determine the court of competent jurisdiction to decide the issues of privilege.

ORDERED that Florida is a court of competent jurisdiction to decide issues of privilege in the Nelson deposition; and it is further

ORDERED that the Nelson deposition and the assertion of an objection based on privilege shall be conducted as follows:

1. An objection of privilege shall be reserved for later determination. The deposition shall be continuous and all objections based on privilege shall be accumulated and brought before a court of competent jurisdiction after the deposition is completed.

2. The appropriate court of competent jurisdiction to determine objections based on privilege for a non-party shall be made to the court in the state where the discovery is being, or is to be, taken.

3. In the event the objection to privilege is not sustained, Prudential shall be offered the right of interlocutory appeal to that state's court of intermediate appeal. Such appeal will be filed on an expedited basis and in no event later than five business days from the date of denial of the claim of privilege.

4. If the court of intermediate appeal refuses to hear Prudential's application or denies the objection based on privilege, then the non-party witness shall promptly answer the objected-to question; and it is further

ORDERED that this Court retains exclusive jurisdiction in the event further relief is required.