Andrew E. **PLAISTED** and Stephanie L. Plaisted, individually and as administrators of the estate of Andrew D. Plaisted, Plaintiffs,

v.

**GEISINGER MEDICAL CENTER** and Geisinger Clinic, Defendants.

No. 4:CV–01–1074.

United States District Court, M.D. Pennsylvania.

Oct. 15, 2002.

Charles P. Hehmeyer, Raynes, McCarty, Binder, Ross & Mundy, Philadelphia, PA, for plaintiffs.

Edward J. Zych, Geisinger System Services, Dept. of Legal Services, 30–21 Litigation Counsel, Danville, PA, Allan H. Starr, Anna Marie Bryan, White and Williams, LLP, Philadelphia, PA, for defendants.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

Plaintiffs Andrew E. Plaisted and Stephanie L. Plaisted, individually and as administrators of the estate of their son, Andrew D. Plaisted (Drew), commenced this medical malpractice action against defendants Geisinger Medical Center and Geisinger Clinic (collectively, Geisinger). We have diversity jurisdiction. See 28 U.S.C. § 1332.

Plaintiffs allege that agents of defendants failed, *inter alia*, to monitor properly and correct Drew's serum sodium levels on December 25, 2000 and December 26, 2000, while he was admitted to the Geisinger pediatric intensive care unit. This failure allegedly caused Drew's brain to swell massively, resulting ultimately in his death.

This opinion addresses two outstanding motions by plaintiffs to compel deposition answers notwithstanding defense counsel's instructions not to answer. The motions followed the depositions of Dr. Richard Salerno, Dr. Frederick Emge, Dr. Robert Brown, and Dr. Scott Mitchell; all four physicians are Geisinger employees, and all four were in some way involved in Drew's care. Plaintiffs allege that during the deposition of each doctor, defense counsel engaged in improper behavior as defined by Federal Rule of Civil Procedure 30(d)(1). The alleged improprieties include making lengthy coaching objections, instructing witnesses not to answer certain questions, and leaving the deposition room on two occasions while a question was pending.

Plaintiffs ask that they be permitted to redepose Salerno, Emge, Brown, and Mitchell in the areas not completed because of the alleged improper behavior. Plaintiffs also ask that they be permitted to question Brown as to what, if anything, defense counsel discussed with him during the two breaks she took during his deposition while a question was pending.

We will grant plaintiffs' motions to redepose each doctor in the areas that were not permitted by, or were obstructed by, defense counsel and to question Brown about what, if anything, defense counsel discussed with him during the two breaks she took during his deposition while a question was pending.

### DISCUSSION:

### I. STATEMENT OF RELEVANT FACTS

Plaintiffs allege that Geisinger physicians failed, *inter alia*, to monitor and correct Drew's serum sodium while he was a patient at Geisinger. Drew's serum sodium fell from 140 mmol/L to 121 mmol/L over the course of approximately 24 hours from December 25 to December 26, 2000. Plaintiffs allege that the decrease in serum sodium resulted in osmotic brain swelling and, a day later, Drew's death. To that end, as part of the discovery process, plaintiffs' counsel conducted depositions of several Geisinger physicians involved in Drew's care, including Salerno, Emge, Brown, and Mitchell. Plaintiffs allege that defense counsel engaged in improper behavior during each of the depositions. The allegations of impropriety include instructing witnesses not to answer certain questions, making disruptive and "coaching" objections, and leaving the deposition room while a question was pending.

We have reviewed each deposition in its entirety before making our decision on the motions. When, in this opinion, we refer to a deposition, it is to the entire deposition of each witness as provided by defendants (Rec. Doc. No. 20, Exs. A, B, & C; Rec. Doc. No. 23, Ex. A), rather than to the excerpts provided by plaintiffs.

### A. SALERNO DEPOSITION

Salerno was the attending physician in charge of Drew's care during the period from December 25, 2000 to December 26, 2000, when Drew's sodium level dropped from 140

to 121. During Salerno's deposition, plaintiffs' counsel asked him about an order he had written to change the amount of a prescribed sedative administered to Drew. Specifically, plaintiffs' counsel asked why Salerno changed the prescription. (Salerno Dep. at 75, lines 8–14.) After Salerno responded that he could only speculate as to the reason for the prescription change, plaintiffs' counsel asked him if the reason he changed the prescription was in order to keep Drew sedated. (Salerno Dep. at 75, lines 16–18.) Defense counsel instructed Salerno not to answer the question, as follows:

Q Isn't it likely, Doctor, that the reason that you wrote that order was because [Drew] required more frequent dosages . . . to remain sedated?

[Defense Counsel]: Objection. Don't answer. The doctor just said he can only speculate. Asked an answered.

[Plaintiffs' Counsel]: I'm going to ask that you answer the question, Doctor.

[Defense Counsel]: Don't answer the question.

Q Can you think of any other reason why you would have upped the time for him to receive [the prescribed sedative] from two hours—every two hours as needed to every one hour as needed other than he was requiring more frequent administration to remain sedated?

[Defense Counsel]: Objection. That's counsel's statement and he is not a physician. He just said he can only speculate. Don't answer the question.

Q It's a different question. I'm going to ask you to answer the question.

[Defense Counsel]: Well—

Q I'm going to ask you to answer the question.

[Defense Counsel]: Objection. Don't answer.

Q I want to know is there any other reason that you're aware of that he would have required [the prescribed sedative] more frequently other than that he was beginning to wake up and needed it more frequently to remain sedated?

[Defense Counsel]: Objection. Don't answer. Asked and answered. You can sit and stare at the witness all you want. I told him not to answer. Next question. (Salerno Dep. at 75, line 16–76, line 22.)

## B. EMGE DEPOSITION

Emge was the attending physician in charge of Drew's care when he was admitted to Geisinger on December 25, 2000. Plaintiffs' counsel took Emge's deposition on January 31, 2002.

In addition to his role as attending physician at Drew's admission, Emge was the pediatric cardiologist on call during the period from December 25, 2000 to December 26, 2000, when Drew's sodium level dropped from 140 to 121. Mitchell consulted Emge in the early morning hours of December 26, 2000 because Drew had developed a cardiac arrhythmia. Emge indicated in his consult note that Mitchell had reported no change in lab values, even though the report of blood gases for December 26, 2000 at 2:05 a.m. indicates that Drew's serum sodium level had fallen to 128 mmol/L. (See Pls.' Exs. 3 & 4, Rec. Doc. No. 14.)

Plaintiffs' counsel asked Emge what he considered to be the maximum allowable rate of drop of serum sodium in a child Drew's age before the brain would begin to swell. (Emge Dep. at 124, lines 14–19.) After Emge responded, plaintiffs' counsel attempted to pursue the question further. Defense counsel refused to allow Emge to answer certain questions. At one point, defense counsel instructed plaintiffs' counsel to "ask the question, and I'll consider whether I'll let him answer it or not." (Emge Dep. at 127, lines 9–10.) After some four pages of instructions from defense counsel not to answer, plaintiffs' counsel proceeded with questions on a different topic. (See Emge Dep. at 128–132.)

## C. BROWN DEPOSITION

Brown is the pathologist who performed Drew's autopsy and wrote his final autopsy report. Plaintiffs' counsel took Brown's deposition on April 23, 2002. In his preparation of Drew's final autopsy report, Brown relied in part upon the report of Dr. Javad Towfighi, a neuropathologist at Hershey

Medical Center, who, at Brown's request, had performed the autopsy of Drew's brain. At the time he prepared the final report, Brown was also in possession of a letter from Dr. Holmes Morton, a metabolic consultant, to Towfighi in which Morton hypothesizes that Drew may have died from brain swelling caused by a rapid decrease in serum sodium. (*See* Pls.' Ex. 6, Rec. Doc. No. 14.)

Plaintiffs' counsel attempted to ask Brown about certain discrepancies between his and Towfighi's findings. Throughout this portion of the questioning process, defense counsel engaged in lengthy objections that plaintiffs allege were designed to coach the witness before she allowed Brown to answer. (*See* Brown Dep. at 68, line 8–74, line 5.) Defense counsel interjected multiple objections during follow-up questioning in this area that plaintiffs allege "disrupted the flow of questioning and made it impossible to create a proper record." (Pls.' Mot. Compel, Rec. Doc. No. 11, ¶ 59; *see also* Brown Dep. at 74, line 7–77, line 22.) When plaintiffs' counsel asked Brown whether he recalled if Towfighi had spoken to him about Morton's findings and their consistency with Towfighi's, Brown adopted in his answer the language defense counsel used in her objection, as follows:

Q Yes. But my question was did Dr. Towfighi talk to you about whether Dr. Morton's discussion of hyponatremia in Drew Plaisted causing brain swelling, did he talk to you at all about whether that made sense in this context and was consistent with his report?

[Defense Counsel]: I'm objecting because this witness's conversations with Dr. Towfighi, I think, were thoroughly explored before. And the witness has already testified a couple of times that he received a letter from Dr. Towfighi, and he vaguely recalls perhaps a telephone conversation, but he didn't—he didn't tell you at all that he remembered specifics. So now you are probing him again on specifics. He has already told you that he only had, at best, a vague recollection of a possible conversation. I think that's a fair restatement of his testimony.

[Brown]: I don't remember a specific conversation about the specifics of your question.
(Brown Dep. at 128, line 10–129, line 2.)

Throughout the course of the deposition, defense counsel made repeated objections and instructed Brown not to answer before allowing him to answer several questions, such as whether Towfighi's failure to perform an ultrastructural examination on Drew's brain resulted in the lack of evidence of damage to certain brain cells, whether Brown had considered that Drew had suffered no brain damage prior to his arrival at Geisinger, whether Brown could give an estimate as to a range of time he believed Drew had stopped breathing prior to his arrival at Geisinger, and whether certain of Drew's brain injuries might have resulted from blood flow compromise after his brain had swelled. (*See* Brown Dep. at 77, line 7–80, line 6; 81, line 13–82, line 20; 85, line 12–87, line 10; 121, line 6–122, line 17.)

Defense counsel refused to allow Brown to answer several questions, including how Brown knew that Drew ever went through a period where he wasn't breathing prior to his admission to the hospital, whether a rapid drop in serum sodium can cause water to leave the blood vessels and cause swelling in the brain, whether Drew's brain injury could have occurred after his admission to Geisinger, and whether Brown did anything to investigate various concerns raised by Morton. (*See* Brown Dep. at 83, line 6–84, line 11; 111, line 18–112, line 22; 123, line 4–125, line 15; 130, line 5–132, line 5; 132, line 22–133, line 9.)

On two separate occasions during Brown's deposition, defense counsel left the room while a question was pending. The first time, plaintiffs' counsel asked Brown how he interpreted certain language in Towfighi's report. Defense counsel instructed Brown not to answer. (Brown Dep. at 92, line 2–25.) Plaintiffs' counsel pursued the question, as follows:

Q I never asked you that question. Are you refusing to answer it?

[Defense Counsel]: We're going to take a break for five minutes and I'll decide whether he does. Let's step out for a

minute. It's 12:44 on the record. I'm stepping out for a minute.

[Plaintiffs' Counsel]: You know the rules in federal court. You can't discuss this question with him, Anna.

[Defense Counsel]: I'm a lawyer who's licensed here and I know the rulings.

(Whereupon, a recess was taken from 12:44 until 12:46 p.m.)

(Brown Dep. at 93, line 1–12.)

Brown answered the question after the recess. (*Id.* at line 24.) Defense counsel left the room again when plaintiffs' counsel asked Brown whether, as a general truism, when serum sodium drops rapidly it can cause water to shift from blood vessels to the brain. Defense counsel made repeated objections before announcing "[t]hat [question] won't be answered. I have an urgent call I have to make." (Brown Dep. at 116, line 18–19.) After a seven-minute recess, Brown answered the question.

### D. MITCHELL DEPOSITION

Mitchell was the Geisinger resident in charge of Drew's care during the period from December 25, 2000 to December 26, 2000, when Drew's sodium level dropped from 140 to 121. Defense counsel refused to allow Mitchell to answer several questions, including what Mitchell's pediatric textbook says about the connection between decreasing serum sodium and the risk of brain swelling in children, whether Mitchell considered Drew to be at risk of intra cranial pressure due to pre-admission hypoglycemia and respiratory arrest, whether intra cranial pressure is a possible cause of a specific condition Mitchell had considered in Drew's diagnosis, and whether Mitchell considered whether there was risk to giving Drew as much fluid he received if he was not severely dehydrated. (*See* Mitchell Dep. at 136, line 3–23; 171, line 1–172, line 5; 172, line 7–173, line 11; 194, line 11–196, line 25.)

### II. STANDARD

It is under Federal Rule of Civil Procedure 37 that a court is, upon motion of a party, empowered to issue an order compelling discovery where "a deponent failed to answer a question propounded or submitted under Rule[ ] 30." FED. R. CIV. P. 37(a)(2)(B). As required by the rule, plaintiffs have included certification that they have in good faith conferred with defendants in an effort to secure the requested information without court action. (*See* Rec. Doc. No. 13; Rec. Doc. No. 15.)

### III. PLAINTIFFS' MOTION

Plaintiffs ask that they be permitted to redepose "liberally" Salerno, Emge, Brown, and Mitchell in the areas not completed because of defense counsel's objections and instructions not to answer at each witness's deposition. Plaintiffs also ask that they be permitted to ask Brown about conversations with defense counsel while questions were pending. Although they are entitled to do so, plaintiffs do not ask for sanctions.

The Third Circuit has yet to address the issues presented by this motion. Given that, we adopt the guidelines for attorney behavior at depositions announced in *Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D.Pa.1993). Although *Hall* was decided before the 1993 amendments to the Federal Rules of Civil Procedure, the decision considers Rule 30(d), a proposed amendment at the time, and incorporates it into the guidelines it sets forth. *See Hall,* 150 F.R.D. at 530. Rule 30 governs oral depositions and provides, in relevant part, that:

> Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion [to protect the deponent or party from annoyance, embarrassment, or oppression].

FED. R. CIV. P. 30(d)(1). "Aimed at reducing the number of interruptions during depositions," Rule 30 sets forth the general rule that "counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer." FED. R. CIV. P. 30 advisory committee's note.

*Hall* "has received substantial attention in the legal literature" and has been adopted by various courts. 7 JAMES WM. MOORE ET AL.,

Moore's Federal Practice § 30.43[6] (3d ed.2000). *See, e.g., O'Brien v. Amtrak,* 163 F.R.D. 232, 236 (E.D.Pa.1995) (indicating a willingness to use the *Hall* guidelines). We believe that *Hall* has established clear, workable guidelines that we find particularly applicable to the instant motions. Those guidelines most applicable include the following:

All objections, except those which would be waived if not made at the deposition under [Rule 32(d)(3)], and those necessary to assert a privilege, to enforce a limitation on evidence directed by the court, or to present [a protective motion] shall be preserved. Therefore, those objections need not and shall not be made during the course of depositions.

Counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege or a limitation on evidence directed by the court.

Counsel shall not make objections or statements which might suggest an answer to a witness. Counsels' statements when making objections should be succinct and verbally economical, stating the basis of the objection and nothing more.

Counsel and their witness-clients shall not engage in private, off-the-record conferences during depositions or during breaks or recesses, except for the purpose of deciding whether to assert a privilege.

Any conferences which occur pursuant to, or in violation of [the guideline prohibiting off-the-record conferences between counsel and witnesses during breaks or recesses] are a proper subject for inquiry by deposing counsel to ascertain whether there has been any witness-coaching and, if so, what.

Any conferences which occur pursuant to, or in violation of [the guideline prohibiting off-the-record conferences between counsel and witnesses during breaks or recesses] shall be noted on the record by the counsel who participated in the conference. The purpose and outcome of the conference shall also be noted on the record.

*Hall,* 150 F.R.D. at 531–32.

Having adopted the guidelines set forth in *Hall* and Rule 30, we will now discuss each of plaintiffs' allegations of impropriety—lengthy coaching objections, instructions not to answer, and leaving the deposition room with a question pending—separately.

### A. COACHING OBJECTIONS

Attorneys are permitted to make objections during oral depositions. After the objection has been noted on the record, however, "the examination shall proceed, with the testimony being taken subject to the objections." FED. R. CIV. P. 30(c). This is so because "it is not the prerogative of counsel, but of the court, to rule on objections." 10 Fed. Proc., L.Ed. § 26:298 (footnote omitted). At each deposition in question in this motion, the parties stipulated that objections except as to form are reserved to time of trial. (*See* Salerno Dep. at 3; Emge Dep. at 4; Brown Dep. at 3; Mitchell Dep. at 3.)

■ We find that defense counsel did not state her objections concisely and in a non-argumentative and non-suggestive manner during each deposition. We also find that although she had stipulated that she would, defense counsel did not reserve her objections except as to form to time of trial. Defendants argue that counsel's objections were not coaching and that they were "appropriate and necessary" when each deposition is considered as a whole in light of each witness's role in the litigation. (Defs.' Br. Opp'n, Rec. Doc. No. 19, at 2; Defs.' Br. Opp'n, Rec. Doc. No. 22, at 2.)

■ Relying on Federal Rule of Civil Procedure 26(b)(2), defendants contend that counsel's objections were necessary because the discovery sought in each deposition was "unreasonably cumulative or duplicative" or was "obtainable from some other source that is more convenient, less burdensome." (Defs.' Br. Opp'n, Rec. Doc. No. 19, at 2.) Rule 26(b)(2) provides in part that "the frequency or extent of use of the discovery methods otherwise permitted under these rules ... shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Defendants have failed to recog-

nize that under Rule 26, the determination as to whether certain discovery is cumulative or available from another source is for the court to make. Defense counsel took it upon herself to make this determination at the depositions of Salerno, Emge, Brown, and Mitchell. That was simply improper. Moreover, we find it hard to believe that defense counsel would act in front of this court in the same manner she did at any of the four depositions at issue here. As an officer of the court, defense counsel should have been aware of the provisions of Rule 30 at the time of each deposition. Objections that go on for pages and that result in an incomplete answer or in the witness's adoption of counsel's statement are suggestive. For these reasons, we find it appropriate to give plaintiffs' counsel the opportunity to re-depose Salerno, Emge, Brown, and Mitchell in those areas where their answers were rendered incomplete or tainted due to defense counsel's objections.

## B. INSTRUCTIONS NOT TO ANSWER

■ "Directions to a deponent not to answer a question can be even more disruptive than objections." FED. R. CIV. P. 30 advisory committee's note. The defendants admit that each instruction not to answer was not necessary to preserve a privilege. In addition, defense counsel was neither enforcing a limitation imposed by this court nor preparing to present a protective motion when she instructed her witnesses not to answer questions. Defendants nevertheless deny that any such instruction was improper. In each instance where an instruction not to answer was given, defendants maintain that the question was either properly directed to another witness or had been answered and further questioning "asked for pure speculation, was irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence." (Defs.' Resp., Rec. Doc. No. 18, ¶¶ 25, 42; Defs.' Resp., Rec. Doc. No. 21, ¶ 8.)

Rule 26 provides in further part that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "[r]elevant information need not be admissible at the trial if the discovery appears rea-

sonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). After having reviewed each deposition in question in its entirety, we find that the types of questions that defense counsel prohibited Salerno, Emge, Brown, and Mitchell from answering do not appear to be irrelevant or not reasonably calculated to lead to the discovery of admissible evidence. All four physicians were in some way involved in Drew's care, and the information sought by plaintiffs' counsel in each deposition was not so far removed from the facts of the case to make it undiscoverable. In addition, even if a question may be properly directed to one particular person, the posing of that question to another may lead to the discovery of admissible evidence.

In any event, under Rule 30, instructions not to answer are limited to those situations where counsel is protecting a privilege, enforcing a court-imposed limitation, or preparing to present a protective motion. "A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer." *Hall*, 150 F.R.D. at 528 (footnote omitted). Defense counsel was not engaged in any practice permitted under Rule 30 when she gave instructions not to answer questions. We therefore find it appropriate to allow plaintiffs' counsel to re-depose Salerno, Emge, Brown, and Mitchell in those areas where defense counsel refused to allow them to answer questions.

## C. LEAVING THE DEPOSITION ROOM WITH A QUESTION PENDING

■ Defense counsel admits to having taken two breaks during Brown's testimony, but she denies that a question was pending at either break. Rather, defendants allege that at each point during Brown's deposition where defense counsel took a break, each question "had already been answered several times." (Defs.' Resp., Rec. Doc. No. 18 ¶¶ 72, 73.) After the first break, however, the first sentence on the record is plaintiffs' counsel asking Brown if he remembered the

question. (*See* Brown Dep. at 93, line 13–15.) The first sentence on the record after the second break is defense counsel asking, "Do you want to read back the last question? I think there had been a question pending." (Brown Dep. at 116, line 23–24.)

Under Rule 30(c), examination at a deposition is to proceed as it does at trial. *See* FED. R. CIV. P. 30(c). "During a civil trial, a witness and his . . . lawyer are not permitted to confer at their pleasure during the witness's testimony. . . . The same is true at a deposition." *Hall,* 150 F.R.D. at 528. As did the court in *Hall,* we find that any such conference is not covered by the attorney-client privilege and that the deposing attorney is therefore entitled to inquire about the content thereof. *See Hall,* 150 F.R.D. at 529 n. 7. We also find, however, that a conference is permissible if its purpose is to determine whether to assert a privilege. "However, when such a conference occurs, the conferring attorney should place on the record the fact that the conference occurred, the subject of the conference, and the decision reached as to whether to assert a privilege." *Hall,* 150 F.R.D. at 529–30.

Defense counsel did not indicate on the record that either break she took during Brown's deposition was to determine whether to assert a privilege. However, defense counsel specifically denies that any improper discussions took place during the breaks and claims that "the deposition transcripts are clear on this matter." (Defs.' Resp., Rec. Doc. No. 18 ¶ 102.) We disagree. The deposition transcripts show only that defense counsel took two separate breaks with a question pending at each. The transcripts do not indicate what, if anything, defense counsel and Brown discussed at the break. We therefore find it unclear whether any improper discussions took place. Defense counsel has indicated that she is willing to provide written affidavits as to the lack of improper discussions during the breaks in Brown's deposition. While we find this unnecessary, we think it is proper to allow plaintiffs' counsel to question Brown about any discussion that took place during the two breaks.

## CONCLUSION:

Defense counsel acted improperly under the guidelines for attorney conduct at depositions set forth in *Hall* and in Rule 30 when, during four separate depositions, she made repeated objections, instructed witnesses not to answer certain questions, and left the deposition room while a question was pending. We therefore find it appropriate to allow plaintiffs' counsel to re-depose each witness in the areas where their answers were incomplete or where they were not permitted to answer questions because of defense counsel's improper behavior. We also find it appropriate to permit plaintiffs' counsel to pose questions to Brown about any discussion that may have taken place during the two breaks defense counsel improperly took during his deposition.

We note that defendants have requested oral argument. Given the manner in which defense counsel conducted herself at each deposition, it is obvious to us that she engaged in the alleged improper behavior. We therefore find that oral argument is unnecessary. An appropriate order follows.

## *ORDER (# 1)*

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. Plaintiffs' motions to compel deposition answers (Rec. Doc. No. 11; Rec. Doc. No. 15) are granted.

2. Defendants shall produce Salerno, Emge, Brown, and Mitchell for re-deposition on the subjects outlined in plaintiffs' motion. Plaintiffs' counsel shall be permitted liberal re-questioning in all areas that were the subject of improper objections and instructions not to answer.

3. Plaintiffs' counsel shall be permitted to ask Brown questions regarding any conversations with defense counsel on the two occasions when defense counsel took breaks while questions were pending.

4. Re-deposition shall occur at a mutually agreeable time at Geisinger Medical Center within thirty (30) days of this Order. Unless otherwise agreed, defendants must make Sal-

erno, Emge, Brown, and Mitchell available on the same day. Discovery is extended for the sole purpose of allowing for these four re-depositions.

5. Depositions shall otherwise be conducted in compliance with this Order.

6. Further violations of Rule 30 by defense counsel in this matter may result in an award of sanctions and costs to plaintiffs.