**AmerisourceBergen Drug Corp.
v. CuraScript Inc.**

*Howard D. Scher,* for plaintiff.

*Dwayne F. Stanley,* for defendant CuraScript.

*Robert V. Dellosa,* for defendant Priority Health Care.

ABRAMSON, *J.,* April 17, 2007—The focus of this appeal is whether a deposition may be reopened and a deponent questioned as to his private off-the-record conversation with counsel after he changed his testimony.

On February 19, 2007, counsel for CuraScript Inc. and Priority Health Care Corporation (CuraScript) deposed Alan Clock, former vice president of Alternative Care at AmerisourceBergen. Mr. Clock was allegedly involved in negotiations of an agreement between the parties

herein. During his deposition, CuraScript's counsel questioned Mr. Clock regarding his understanding of the liquidated damages provision contained within the CuraScript agreement. In response, Mr. Clock testified that the provision would serve to compensate Amerisource-Bergen for any damages incurred in the past, present and future as it related to the deal. During a CuraScript counsel's question, three breaks occurred. Once CuraScript's counsel completed his questioning, AmerisourceBergen's counsel's first question to the deponent was as follows:

"By Mr. Garcia:

"Q. Mr.—Mr. Clock I would just like to clarify a couple of points regarding your testimony. I think in one area you may have misspoken. Would you turn to exhibit LaBrecque 4 please?"

In response, Mr. Clock testified as follows:

"By Mr. Garcia:

"Q. And specifically the second terminated the contract is the termination amount specified in paragraph 7?

"A. No.

"Q. Uhm, by no do you mean that's not your understanding?

"A. That's not my understanding. That this would be the only, uhm—that this would be the only damages if, uhm, CuraScript terminated the contract.

"Q. If you look at the second sentence under paragraph 7 where it says in the last clause, 'in addition to any other amounts that may be owned [sic] to Amerisource-Bergen, as of the termination date,' did you have an understanding of what types of other additional amounts that might be referring to?

"A. It—it could be a varieties of things. It could be, uhm, past due invoice, late fees. I mean it could be a variety of things that are—in the—in this agreement and including the—you know any other things as it relates to, uhm—anything else in this—this agreement.

"Q. Well, for example, if CuraScript did not comply with the 3.5 percent ProGenrics requirement—

"Mr. Monafo: Objection. Leading.

"Mr. Garcia: Let me finish the question yet, how do you know.

"Mr. Monafo: You already led him, I already violated the rules so the objection is valid. You go right ahead and finish your leading question.

"By Mr. Garcia:

"Q. For example if CuraScript violated the 3.5 percent requirement, is that something that you would interpret to be within the type of items that Amerisource could recover for notwithstanding this termination payment?

"By Mr. Monafo: Objection. Leading.

"Mr. Garcia: It's yes-or-no question.

"Mr. Monafo: It's also a leading yes-or-no question.

"The witness: I—presume that—that that would be something that they, uhm—that AmerisourceBergen would be able to—to recover as well, as I read this.

"By Mr. Garcia:

"Q: Do you understand this provision to be precluding recovery of profits lost into the future after the termination?

"A. I—I don't know if it says that or not in this, one way or the other. I mean I'm not a legal expert.

"Q. So in your opinion or do you have an opinion one way or the other as to whether or not Amerisource would be entitled to recover lost profits for the income it wouldn't have received during the rest of the term because of the termination?

"Mr. Monafo: Objection. Asked and answered. He already answered it, but go ahead.

"The witness: I don't really have an opinion one way or the other.

"Mr. Garcia: Okay. That's all I have, that clarifies it. Thank you." (Cite)

This testimony was different than that testimony rendered in response to questions posed by CuraScript's counsel. After AmerisourseBergen's counsel completed his questioning, CuraScript's counsel questioned Mr. Clock as follows:

"Mr. Monafo: Thank you. I have a question now based on that clarification.

"Examination

"Mr. Monafo:

"Q. Uhm, Mr. Clock, uhm, at any time during the breaks of this deposition, did you discuss this provision Mr. Garcia just asked you about, any other amounts that may be owed?

"Mr. Garcia:

"Objection to any discussions. That would be privileged attorney/client communications.

"Mr. Monafo: Okay. Are you instructing him not to answer?

"Mr. Garcia: Of course.

"Mr. Monafo: Are you accepting your counsel's advice?

"The witness: Yes. (Direction not to answer.)

"Mr. Monafo:

"Q. We did take breaks in the—throughout the deposition, did we not?

"A. Yes.

"Q. And you had a chance to visit with your counsel during those breaks?

"A. Yes.

"Mr. Monafo: Rudy, I think if you—if you discussed it after I asked him about it in the—in the—during the duration of the deposition that it's not—it's not covered by the privilege. That would be my position.

"Mr. Garcia: Well, I will—you're free to state your position. I don't agree with it, but it doesn't matter. Any conversations we had are covered by the privilege." (Deposition of Mr. Clock pp. 208-16.)

CuraScript filed a discovery motion specifically addressing whether the meaning of the liquidated damage provision was discussed during the private off-the-record conversation between counsel for AmerisourceBergen and Mr. Clock. On March 13, 2007, this court entered an order granting a motion to compel the reopening of a deposition to respond to questions regarding the witness's private conversations with counsel for AmerisourceBergen after the start of, but prior to, the completion of the deposition. This appeal followed. AmerisourceBergen also filed an emergency motion to suspend the case pending appeal. The court denied the motion and stated, "The court also instructed, and the attorneys understood, that

that which was to be disclosed were conversations which might have caused the witness to change, modify or alter testimony on a subject already discussed, not all privileged communications." CuraScript filed an emergency application for stay or suspension pending appeal with the Superior Court which was granted.

"Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard."[1] To the extent that the question involves a pure issue of law, the scope and standard of review are plenary.[2]

Our analysis begins with *Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D. Pa. 1993), an opinion by Federal District Judge Robert S. Gawthrop III, which established specific rules of conduct for counsel at a discovery deposition due to discovery abuses he found to commonly occur within his district.[3] One of the rules of conduct specifically prohibited counsel and their witness-clients from engaging in private, off-the-record conferences during depositions or during breaks or recesses, except for the purpose of deciding whether to assert a privilege.[4]

---

1. *McNeil v. Jordan,* 586 Pa. 413, 426, 894 A.2d 1260, 1268 (2006).

2. *Id.*

3. The opinion and order in *Hall* were never adopted as a standing order in the Eastern District of Pennsylvania but were used as guidelines by many judges within and without the district.

4. The other rules included, inter alia, counsel may not instruct the witness to ask deposing counsel rather than the witness's own counsel for clarifications or explanations, counsel may not object except to those questions asserting a privilege and enforcing a limitation on evidence directed by the court, counsel shall not direct or request that a witness not answer a question unless counsel has objected to the question on the ground that the answer is protected by privilege or a

The restrictions were ordered when the defendant's counsel attempted to ask the deponent about a document which had been handed to him, and the deponent's counsel insisted on reviewing the document with the deponent before he answered any questions about it. A telephone call to the judge resulted in the termination of the deposition in order that the matter be resolved by the court. The court articulated its rationale for the restrictions as follows:

"The underlying purpose of the deposition is to find out what a witness saw, heard, or did—what the witness thinks. A deposition is meant to be a question-and-answer conversation between the deposing lawyer and witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness—not the lawyer—who is the witness. As an advocate, the lawyer is free to frame those facts in a manner favorable to the client, and also to make favorable arguments of law. But the lawyer is not entitled to be creative with the facts." *Id.* at 528.

As it pertains to the question of whether a court may restrict attorney-client conferences during a deposition, the reaction to *Hall's* absolute prohibition varies greatly.

---

limitation on evidence directed by the court, counsel shall not make an objection which might suggest an answer to a witness and deposing counsel shall provide to the witness's counsel a copy of all documents shown to the witness during a deposition.

Several states have adopted language from *Hall* in their respective rules of civil procedure that prohibit to varying degrees conferences between lawyers and their clients once a deposition has begun.[5] Numerous judges from the Eastern District of Pennsylvania and other jurisdictions adopted the *Hall* guidelines.[6]

Other courts refuse to implement any of the *Hall* guidelines. In *Acri v. Golden Triangle Management Ac-*

5. See Alaska R.C.P. 30(d)(1) ("Continual and unwarranted off-the-record conferences between the deponent and counsel following the propounding of questions and prior to the answer or at any time during the deposition are prohibited."); Del. Super. Ct. R.C.P. 30(D)(1) ("From the commencement until the conclusion of a deposition, including any recesses or continuances thereof of less than five calendar days, the attorney(s) for the deponent shall not consult or confer with the deponent regarding the substance of the testimony already given or anticipated to be given except for the purpose of conferring on whether to assert a privilege against testifying or on how to comply with a court order or suggest to the deponent the manner in which any question should be answered); N.J. Ct. R. 4:14-3(f) ("Once the deponent has been sworn, there shall be no communication between the deponent and counsel during the course of the deposition while testimony is being taken except with regard to the assertion of a claim of privilege, a right of confidentiality or a limitation pursuant to a previously entered court order.); S.C. R.C.P. 30(j)(5)-(6) ("(5) Counsel and a witness shall not engage in private, off-the-record conferences during depositions or during breaks or recesses regarding the substance of the testimony at the deposition, except for the purpose of deciding whether to assert a privilege or to make an objection or to move for a protective order. (6) Any conferences which occur pursuant to, or in violation of, section (5) of this rule are proper subjects for inquiry by deposing counsel to ascertain whether there has been any witness coaching and, if so, to what extent and nature.).

6. *Johnson v. Wayne Manor Apartments,* 152 F.R.D. 56, 59 (E.D. Pa. 1993); *Frazier v. SEPTA,* 161 F.R.D. 309, 315 (E.D. Pa. 1995); *O'Brein v. Amtrak,* 163 F.R.D. 232 (E.D. Pa. 1995); *Plaisted v. Gesinger Medical Center,* 210 F.R.D. 527 (M.D. Pa. 2002).

*ceptance Co.,*[7] Judge R. Stanton Wettick Jr. chose not to follow the *Hall* guidelines in his case, finding that the adversarial application of the *Hall* rules could have unintended consequences on the deponent such as the unethical deposition interrogator using the rules against the witness. Despite Judge Wettick's choice not to follow *Hall,* he concluded that if he thought there were a large number of lawyers trying to thwart the discovery process, he would agree with Judge Gawthrop that courts must develop different approaches.

Other courts have adopted a limited form of *Hall* to curb deposition misconduct.[8] For instance, restricting attorney-deponent conferences only when documents are shown to the deponent,[9] prohibiting attorney-deponent conferences when initiated by the defending attorney,[10] prohibiting attorney-deponent conferences while a question is pending[11] and prohibiting all attorney-deponent conferences at breaks and overnight recesses when the deposition is held on consecutive days.[12]

7. 142 P.L.J. 225 (1994).

8. See *e.g., In re Stratosphere Corp. Sec. Litig.,* 182 F.R.D. 614 (D.Nev. 1998); *Prudential Ins. Co. of Am. v. Nelson,* 11 F. Supp.2d 572 (D. N.J. 1998) (articulating standards for deposition conduct); *Damaj v. Farmers Ins. Co.,* 164 F.R.D. 559 (N.D. Okla. 1995) (citing *Hall* in setting down guidelines, although refusing to impose the full range of *Hall* restrictions). *McKinley Insfuser Inc. v. Zdeb,* 200 F.R.D. 648, 650 (D. Colo. 2001).

9. *Collins v. International Dairy Queen Inc.,* 1998 U.S. Dist. Lexis 8254 (M.D. Ga. 1998).

10. *Okoumou v. Safe Horizon,* 2004 U.S. Dist. Lexis 19120 (S.D.N.Y. 2004).

11. *In re Stratosphere Corp. Sec. Litig., supra; McKinley Insfuser Inc. v. Zdeb,* 200 F.R.D. 648, 650 (D. Colo. 2001).

12. *United States v. Phillip Morris Inc.,* 212 F.R.D. 418, 420 (D.D.C. 2002).

In *Yoskowitz v. Yazdanfar,*[13] the Pennsylvania Superior Court was given an opportunity to address the issue of attorney-witness conferences during a break in the direct examination of the witness at trial. In that case, the Superior Court held that a trial court erred in ruling that an attorney's private conversation with an expert witness during the witness' direct examination was criminally contemptuous and sanctionable. In reaching its decision, the Superior Court sought to balance the rights of an attorney to an uninhibited judicial forum that preserves the right to zealous representation, with the right of a trial judge to authoritatively maintain order and integrity within his or her courtroom. The court looked to trial custom which prohibits witnesses from discussing testimony during cross-examination when a recess occurs and the record created by the trial judge's inquiry into the off-the-record conversation between counsel and the expert. The court found that insufficient evidence existed to demonstrate that the attorney's conduct was intended to obstruct the proceedings and reversed the finding of contempt.

Unlike the situation in *Yoskowitz,* the record in the case sub judice demonstrates a reasonable suspicion of bad faith conduct, *i.e.,* witness coaching, sufficient to permit inquiry into any conversation between lawyer and client which might have caused the witness to change his testimony concerning a material issue in the case. Mr. Clock testified during cross-examination as to his understanding of the liquidated damage provision. After a recess, CuraScript's counsel prefaced his first question with "I

---

13. 900 A.2d 900 (Pa. Super. 2006).

think you may have misspoken." Ordinarily, rehabilitating a witness who may have misspoken does not create an inference that some form of misconduct occurred. Here, however, the circumstances surrounding the rehabilitation, recess and the prompt by CuraScript's counsel that Mr. Clock misspoke at the very outset of the questioning creates a level of suspicion which merits further inquiry.

Interrogating counsel should be permitted to inquire into why the deponent changed his testimony concerning a material issue in the case where an attorney has provided what appears to be a cue or prompt to commence the differing recitation. The inquiry is solely limited to the subject matter of the conversation and not the substance. Hence, one could liken the inquiry to a privilege log where the subject matter of the document claimed as privilege is revealed while the substance remains protected. Allowing an inquiry into the subject of the conference does not jeopardize a witness's right to counsel nor does it suggest that an interrogating counsel has carte blanche to invade the privileged communications between counsel and his client. On the contrary, the inquiry can only be made where as here the record demonstrates a reasonable suspicion that counsel or a deponent is abusing the deposition process.

Interrogating counsel has the right to the deponent's answers, not an attorney's answers. Permitting such questioning could moot the question altogether. If the witness responds that no conversation occurred about the subject matter in question then the issue of coaching is moot. In the alternative, if the witness responds that a conversation did occur about the subject matter in question then the interrogating attorney should be permitted

to ask why the witness changed his testimony. In such instance the response could be that the lawyer advised the client to tell the truth or it could be that the lawyer instructed the deponent on how to answer. This court believes that instructing a witness how to answer a question does not fall within the narrow finite realm of communications protected by the attorney-client privilege or comments or legal advice protected by the work product privilege. These privileges are not absolute and may be overcome depending upon the circumstances surrounding the communications.

Hence, defendant should be permitted to reopen the deposition to ascertain whether any coaching occurred. Depositions are the factual battleground where the vast majority of litigation takes place. Thus, it is particularly important that this discovery device not be abused. Even though the deposition may be taking place far from a real courtroom, the testimony may be used at trial if the witness becomes unavailable as well as motion practice where deposition testimony has evidentiary value.

Furthermore, witness coaching can significantly interfere with the deposing attorney's access to truthful testimony from the witness. Engaging in witness coaching can obstruct the opponent's access to evidence. Professional Rule of Conduct 3.4, Fairness to Opposing Party and Counsel, states that a "lawyer shall not obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or assert another person to do any such act." Additionally, Rule 3.4 states that "a lawyer shall not falsify evidence, counsel or assist a witness to testify falsely, pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent

upon the content of the witness's testimony or the outcome of the case. Additionally, witness coaching potentially may violate Rule of Professional Conduct 3.3, Candor Toward a Tribunal.

To summarize, some jurisdictions prevent witness coaching by disallowing attorney witness conferences during depositions altogether. In these jurisdictions, coaching is impermissible and if the "no conference" rule is violated, discovery regarding the extent and nature of coaching may take place. In Pennsylvania, we do not have a "no conference" rule. Nevertheless, a means of discovering coaching must exist or it and its mischief will be released undetected (or if detected, left only to arguments about inferences of coaching) and taint or obstruct the administration of justice.

Based on the foregoing, this court's order dated March 13, 2007, should be affirmed.